[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The petitioner brings this re-revised petition for a writ of habeas corpus alleging in the first count that his criminal trial attorney, Thomas Conroy, was ineffective in assisting him in that (1) he failed to call witnesses, Robin Sayles, Harry Faber and Tanya Fuller who had exculpatory evidence and would rebut the state's evidence; (2) he failed to bring to the court's attention a juror who was sleeping during the petitioner's trial; (3) he failed to adequately cross-examine the state's witnesses in particular Jeffrey Dolphin; (4) he failed to call family members, Theresa Faison, Ralph Raymond Ford, Kimberly Shawnese Stevenson, and Tanya Fuller, to present mitigating evidence at the petitioner's sentencing; and (5) he failed to perfect petitioner's right to sentence review. In the second count the petitioner alleges that the court violated the petitioner's due process rights by failing to provide him new counsel for his sentencing when there was a breakdown in the attorney/client relationship.
The petitioner was arrested in Connecticut with the death of Amenophis CT Page 5302 Morris who was fatally shot while sitting on his front porch on March 21, 1994 in New Haven. He was convicted, after a jury trial, of murder as an accessory in violation of G.S. 53a-54a and 53a-8 and Conspiracy to Commit Murder in violation of G.S. 53a-54a and 53a-48 (a).
The petitioner called as witnesses himself, his criminal trial attorney, his aunt, Theresa Faison, his stepfather, Ralph Ford, his sister, Kimberly Stevens, the mother of his child, Tanya Fuller and Harry Faber. Prior to any evidence being presented he withdrew his claim for sentence review.
The petitioner testified that he was arrested in December 1995 and Conroy appointed to him as Special Public Defender. He asked Conroy to subpoena Luis DeLeon, Harry Faber, Tanya Fuller and Jeffrey Dolphin and for sentencing his family members. He acknowledged that DeLeon and Dolphin testified in his case and his aunt testified as an alibi witness.
His aunt, step-father and sister testified in this hearing and all said that they would have spoken in his behalf at the sentencing if they had been called. The essence of such would be that he had been very helpful in caring for his siblings, while his mother was in the hospital but he left his step-father's home when his mother died ten years ago. Tanya Fuller also testified that she felt he was a great guy and would have said so if she had been called. Both his sister and his girlfriend said they had attended the petitioner's trial once or twice each.
Harry Faber testified that he knew the petitioner but not well and not long. He identifies the transcript of his testimony in the Butler case. See Petitioner's Exhibit 5. The testimony was that no one in the neighborhood liked Dolphin and that his reputation was that he was a liar.
DeLeon's testimony was that he saw a black male with a face mask approach the victim from behind and pulled out a handgun and fired six times and the victim fell to the floor of the porch. He could not identify the shooter and saw no one else near him. See Petitioner's Exhibit 1A.
Conroy testified that he represented the petitioner on his criminal trial. There were three (3) co-defendant's. Petitioner's trial was severed from his co-defendants' before Conroy represented him. Conroy suggested waiving the hearing in probable cause because it had no value other than providing the state with a transcript of witnesses' testimony if they would be unavailable at the time of trial. There was a letter which a co-defendant's attorney turned over to the CT Page 5303 state's attorney, the hand writing of which was identified as the defendant's which was tantamount to a confession. He filed an alibi defense because the petitioner's aunt was going to testify that the petitioner lived with her at the time and during the time of the murder he was home with her. He recalled obtaining the trial transcripts of co-defendant James Baker who was tried before the petitioner. Jeffrey Dolphin was the principal witness who placed the petitioner at the scene with a gun along with a co-defendant, Jermaine Harris, both of whom approached the victim's location from which shots were then heard. He had a copy of the statement given on February 28, 1995, Petitioner's Exhibit 2, to Attorney Leo Ahearn recanting the statement given to the police on April 24, 1994. He wanted to get this statement into evidence. He recalls the petitioner complained about a juror sleeping but looked over and saw no one sleeping. The petitioner could not remember where he was on March 21, 1994 but told him to check with his girlfriend and her friend Mona. He gave both names to his investigator but he couldn't locate them. See Respondent's Exhibit B. He also looked for Harry Faber without success.
A successful petitioner must show that there is reasonable probability that but for counsel's unprofessional errors, the result of the proceedings would have been different. Copas v. Commissioner,234 Conn. 139 (1995); Strickland v, Washington, 466 U.S. 668, 694. Despite what appears to be an inconsistent statement to Attorney Ahern, Dolphin's testimony that the petitioner and Harris left the car with the intent to kill Morris is corroborated as to time, location and victim by three (3) witnesses, DeLeon, Williams and Rodriguez, See Petitioner's Exhibit 1(A), and as to the intended victim by the petitioner's own incriminating letter. See Petitioner'sExhibit 1(c). His aunt makes a feeble attempt to give him an alibi by attempting to remember being with him three (3) years after the time of the murder, See Petitioner's Exhibit 1(D), when the petitioner himself several days after the murder gave a different address to two (2) officers. See Petitioner's Exhibit 1(E). The petitioner did not call Robin Sayles but he did call Harry Faber and Tanya Fuller and neither testified that there was exculpatory evidence, he left uncorroborated a sleeping juror, a perusal of Conroy's cross-examination of Dolphin was thorough and incisive and, although family members testified in this habeas, their lack of contact with the petitioner would not stay a just penalty being imposed for this execution which the petitioner, from the evidence presented, engineered. The only addition Harry Faber's testimony would bring to this case is that Harry's opinion is that Dolphin was a liar. Conroy's cross-examination of Dolphin adequately proved that. The petitioner brings attention to the fact that the hand Luis DeLeon saw of the shooter most likely was not the petitioner's. However, the CT Page 5304 jury's verdict amounted to the same fact in that he was found guilty of being an accessory not a principal. The petitioner failed to prove how the result would be different.
Likewise he has failed to prove how Conroy's representation was deficient. It is true that he had difficulty finding certain witnesses, See Respondent's Exhibit A and B, but obviously the petitioner was not helpful. Despite the heavy burden of the petitioner's note to Harris, his trial strategy was consistent and logical, that is, to raise doubt as to the petitioner being at the crime scene.
As to the second count, this court cannot find that the petitioner's unhappiness at the result of the verdict equates to a mutual breakdown of a counsel-client relationship.
For the above reasons the petitioner is denied.
___________________, J. Corrigan